UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CAROL POPPITO,

                          Plaintiff,                      **ORDER**
                                                                            15-CV-7431 (GRB)

       -against-

NORTHWELL HEALTH, INC. f/k/a
NORTH SHORE – LONG ISLAND JEWISH
HEALTH SYSTEM, INC. and HUNTINGTON
HOSPITAL ASSOCIATION,

                          Defendants.
-----------------------------------------------------------X
**GARY R. BROWN, United States Magistrate Judge:**

> *"Everything that is, is thoroughly determined;
> it is what it is, and absolutely nothing else."*
>
>                                                     -Frederic Henry Hedge (1848)[i]

In this action, plaintiff Carol Poppito contends that she was discharged from her employment with the defendants based upon her age, gender, and her purported involvement in protected activities. In response, defendants have presented an enormous catalog of misconduct by plaintiff which they contend led to her dismissal. Presently pending before the Court is a motion by defendants seeking summary judgment. The sole question before the Court is whether, based upon the undisputed facts, defendants have established that the misconduct, rather than the alleged impermissible bases posited by plaintiff, were the cause of her dismissal. As the reasons for her termination were indisputably proper, the motion is granted.

## STANDARD OF REVIEW

As the Court has previously observed, an employment discrimination claim is governed by the following analytical framework:

As an initial matter, a plaintiff bears the burden of establishing a *prima facie* case. *Ruiz v. Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)); *Pathania v. Metro. Museum of Art*, No. CV-11-2119 (JMA), 2013 WL 1182076, at *11 (E.D.N.Y. Mar. 21, 2013); *see Whethers*, 956 F. Supp. 2d at 374-75; *Moultrie v. VIP Health Care Servs*., No. 08-CV-0457 (DLI)(RML), 2009 WL 750219, at *4 (E.D.N.Y. Mar. 19, 2009). To this end, a plaintiff must prove: (1) he was a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action took place under circumstances which give rise to an inference of discrimination. *Broich v. Inc. Vill. of Southampton*, 462 Fed.Appx. 39, 42 (2d Cir. 2012) (quoting *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009)); *Pathania*, 2013 WL 1182076, at *12. The required proof at this stage is low and plaintiff will succeed with a *de minimis* showing. *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 467 (2d Cir. 2001); *see, e.g., Panjwani v. Jet Way Security & Investigations, LLC,* No. 13 Civ. 7186 (SLT) (VMS), 2016 WL 3675331, at *9 (E.D.N.Y. Feb. 26, 2016) (concluding plaintiff failed to establish prima facie case of discrimination despite his "*de minimis* burden"). The burden then shifts to the defendant to produce a legitimate, non-discriminatory justification for its action. *Ruiz,* 609 F.3d at 492; *Sethi v. Narod*, 12 F. Supp. 3d 505, 522 (E.D.N.Y. 2014) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-07 (1993)); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000) (describing defendant's burden as "one of production, not persuasion; it 'can involve no credibility assessment'" (quoting *St Mary's Honor Ctr*., 509 U.S. at 509)). "[A]n 'employer's explanation of its reasons must be clear and specific' in order to 'afford the employee a full and fair opportunity to demonstrate pretext.'" *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001) (*quoting Meiri v. Dacon*, 759 F.2d 989, 996-97 (2d Cir. 1985)), *superseded on other grounds by rule*, Fed. R. Civ. P. 37(e); *see, e.g., McDonnell v. Schindler Elevator Corp*., No. 12-CV-4614 (VEC), 2014 WL 3512772, at *9 (S.D.N.Y. July 16, 2014) ("[Defendant's] evidence establishes clear and specific reasons for Plaintiff's termination...."); *Graham v. City of N.Y.*, No. 05-CV-5428 (CBA)(JMA), 2009 WL 909620, at *9-10 (E.D.N.Y. Mar. 10, 2009), *adopted as modified by*, 2009 WL 909620 (E.D.N.Y. Mar. 31, 2009). Like plaintiff's burden at the prima facie stage, defendant's burden here is not especially high. *Sethi,* 12 F. Supp. 3d at 522 (quoting *Hyek v. Field Support Servs.,* 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010)); *Whyte,* 969 F. Supp. 2d at 254.

Upon defendant's articulation of a legitimate, neutral reason for plaintiff's termination, the burden-shifting framework dissipates and the onus is on plaintiff to prove defendant's actions were motivated, at least in part, by discrimination. *See Hongyan Lu v. Chase Inv. Servs. Corp*., 412 Fed.Appx. 413, 415-16 (2d Cir. 2011); *Joseph v. Owens & Minor Distribution, Inc.,* 5 F. Supp. 3d 295, 308 (E.D.N.Y. 2014) (citing *Henry v. Wyeth Pharm., Inc.,* 616 F.3d 134, 156 (2d Cir. 2010)); *Zhengfang Liang v. Café Spice SB, Inc*., 911 F. Supp. 2d 184, 205-06 (E.D.N.Y. 2012). To defeat summary judgment, plaintiff "must show circumstances to permit a rational finder of fact to infer that the defendant's employment decision was more

likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir. 1997); *see Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2010); *Pathania,* 2013 WL 1182076, at *12 ("If the employer carries this burden, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981))). Plaintiff's offered evidence must be viewed collectively to determine whether there is an issue of fact as to defendant's true motivation. *See Walsh*, 828 F.3d at 76.

*Baby v. Nassau Healthcare Corp.,* No. CV 14-3297 (JMA) (GRB), 2017 WL 3279091, at *9–10 (E.D.N.Y. Feb. 6, 2017), *report and recommendation adopted in relevant part*, No. 14-CV-3297 (JMA) (GRB), 2017 WL 3278901 (E.D.N.Y. Aug. 1, 2017); *see also Blaise v. Verizon N.Y., Inc.*, 17-CV-0125 (GRB), 2019 WL 1261965 at *2–3 (E.D.N.Y. Mar. 19, 2019). In all other respects, this motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor,* 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

## DISCUSSION

In reviewing the Rule 56.1 statements submitted by the parties, which include well more than 100 paragraphs of asserted fact, few of the assertions proffered by defendants have been effectively disputed by plaintiff. *See*, *e.g.*, DE 37, 41. In this regard, a few principles must be bourn in mind. First, "[u]pon the failure to properly controvert a movant's statement of material fact, such statement 'will be deemed admitted for the purposes of the motion.'" *Gervis v. Target Corp.*, No. CV 16-380 (GRB), 2017 WL 3669009, at *2 (E.D.N.Y. July 20, 2017) (citing L. Civ. R. 56.1(c) and collecting cases). In some instances, faced with properly-supported assertions of fact, plaintiff has simply denied those matters without citing or providing supporting evidence. *See*, *e.g.*, DE 41 ¶¶ 3, 71, 87, 103, 124, 137-8. The Court has, in reviewing this matter, conducted an independent search of the record—which is substantial—before determining that

3

given facts were not in dispute. *Compare Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("[E]ven though plaintiff's Rule 56.1 counter-statement failed to specifically controvert these assertions, the unsupported assertions must nonetheless be disregarded and the record independently reviewed."), *with Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (distinguishing *Giannullo* and upholding default where "each statement of proposed undisputed facts was supported by a citation to the record sufficient to prove each such fact").

In other instances, plaintiff has opted to "neither admit nor deny" facts, or state that she lacked sufficient information to respond. *See*, *e.g.*, DE 41, ¶¶ 3, 72, 76, 92, 94, 106, 113, 114, 120, 128. However, a party's failure to respond to a Rule 56.1 assertion based upon a purported lack of information has generally been construed as a failure to contest such fact, which, in appropriate circumstances, may constitute an admission. *See Eze v. Scott,* 11 F. Supp. 3d 376, 378, n.1 (E.D.N.Y. 2014); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 263 (S.D.N.Y. 2007); *Guglielmo v. Marchon Eyewear, Inc.*, 2006 WL 398617, at *1 (E.D.N.Y. Feb. 16, 2006) ("In order to dispute the proffered facts, Plaintiff must do more than simply repeat the word 'denies'"). This principle applies with particular force where, as here, summary judgment follows the conclusion of a multi-year discovery process, and the Court has independently verified the ineffectively contested assertions.

Finally, plaintiff's counsel, working hard to identify disputed issues of fact warranting trial, has attempted to dispute a broad swath of factual assertions by claiming that the evidence supporting such assertions constitutes hearsay. *See*, *e.g.*, DE 41 ¶¶ 29-34; 37-48, 140-41. The problem in this case, though, is that most of the hearsay statements are offered not for the truth of the matter, but rather to provide insight into defendants' thought process in taking disciplinary action against plaintiff. As the Second Circuit has noted "[i]n a discrimination case, however,

we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what 'motivated the employer.'" *McPherson v. N.Y. City Dep't of Educ.,* 457 F.3d 211, 216 (2d Cir. 2006) (quoting *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716, (1983)). One court held:

> the personnel documents, including the performance reviews, complaints, and the accompanying hand-written notes, are not hearsay because they are not being offered to prove the truth of what they assert. Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Rather, the documents are being offered to show the state of mind of Defendant's representatives in making various employment decisions with regard to Plaintiff; the truth of the assertions in the documents is irrelevant.

*Kaur v. N.Y. City Health & Hosps. Corp.,* 688 F. Supp. 2d 317, 323 (S.D.N.Y. 2010). And so it is in this case.

Taken together, the evidence offered by defendants and effectively admitted by plaintiff produces a body of undisputed facts that leave little doubt as to the reasons for plaintiff's termination. *See generally* DE 41. A few examples will suffice: during plaintiff's employment as an ultrasound technician at the medical facilities operated by defendants, management was inundated with negative appraisals and complaints from various sources concerning plaintiff's interactions with patients, coworkers, family members, visitors, and vendors. *See, e.g., id.* at ¶¶ 17–48. Reports about plaintiff stated that she was "overly assertive," "aggressive to the point of intimidating," "condescending," and "rude." *Id.* at ¶¶ 17-20. One coworker—in an incident as to which plaintiff admitted acting inappropriately—charged that the plaintiff was "racist and bullying." *Id.* at ¶¶ 22–27. One coworker lodged a troubling complaint that plaintiff had mistreated a pregnant patient suffering from "nausea, vomiting and pain," by causing the patient to wait hours for an ultrasound. *Id.* at ¶¶ 29–30. A compliance officer investigated the complaint, found to be legitimate, and further determined that plaintiff attempted to uncover the

5

identity of the complainant in an effort to seek "retribution." *Id.* at ¶¶ 33–34. Plaintiff was suspended for two days after improperly accessing private medical records for her own use. *Id.* at ¶¶ 35-36. She was also subject to complaints and/or disciplinary action for (1) reducing patients to tears by, among other things, bullying them, (2) discovery of an offensive video on her work computer and (3) performing sonograms that were "rough and painful." *Id.* at ¶¶ 38–43. Even plaintiff's counsel is forced to concede that plaintiff's record contains "complaints for being rough around the edges." DE 38 at 3.

While plaintiff argues that these complaints against her "had been made in the past," and were therefore pretextual, the undisputed facts further demonstrate that problematic behavior continued into the period immediately preceding her discharge. In March 2014, she was cited numerous times for inappropriate workplace conduct, including using an obscenity with respect to a supervisor and an violating the hospital's ethics code three times in one week. DE 44 at ¶¶ 140–141. That same month, she was discovered literally "lying down on the job" (though there remains a dispute as to whether she was actually sleeping), and she refused to perform an examination assigned to her. *Id.* at ¶¶ 142–144. Even after receiving verbal counselling and written warnings, her problematic workplace conduct continued unabated. *Id.* at ¶¶ 146–174. Unsurprisingly, this history of continued misconduct led to her termination on July 16, 2014. *Id.* at ¶175.[1]

In sum, defendants have offered legitimate, unrebutted reasons for plaintiff's termination, to wit: plaintiff's repeated and serious violations of workplace policies, poor job performance and inappropriate conduct with respect to patients and coworkers. These undisputed facts clearly

---

[1] Plaintiff's counterstatement of material facts, containing complaints of misconduct by other staff members and conspiracy theories concerning her discharge, and irrelevant statistics, some of which remains in dispute, does little to change the analysis here. *See* DE 41 at ¶¶ 1–101.

establish a legitimate, non-pretextual basis for her termination. *See*, *e.g.*, *Preacely v. Schulte Roth & Zabel,* 17 F. App'x. 57, 58 (2d Cir. 2001) ("Even if Preacely had established a *prima facie* case, Schulte has provided ample evidence of a legitimate non-discriminatory reason for discharging Preacely: his violent drawings and inappropriate sexual comments to co-workers"); *Humphreys v. Cablevision Sys. Corp.*, 2012 WL 2317337, at *8 ("The undisputed facts demonstrate that Cablevision's acts were based on the perfectly permissible goal of discouraging workplace harassment"). The undisputed facts belie plaintiff's claim of discrimination, retaliation and hostile work environment.

## **CONCLUSION**

Based on the foregoing, defendants' motion for summary judgment is GRANTED in all respects. The Clerk is directed to close the case.

Dated: Central Islip, New York
August 9, 2019

/s/ Gary R. Brown
GARY R. BROWN
United States Magistrate Judge

---

[i] Writers have attributed the relatively modern expression "it is what it is" to a 1949 article on pioneer life by J.E. Lawrence in the *Nebraska State Journal*. *See*, *e.g.*, William Safire, "It Is What It Is," *The New York Times*, March 5, 2006. Having stumbled across this iteration, published nearly a century earlier as part of a translation of a work by philosopher Johann Gottlieb Fichte in *Prose Writers of Germany*, it seemed appropriate to credit Hedge.